IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-00061-D

| | | |
|---|---|---|
| CINDY L. CHAPLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings [DE-27 & 29] and their respective responses and replies [DE-31, 33 & 34], which have been referred to the undersigned for memorandum and recommendation. Claimant, Cindy L. Chaple, seeks judicial review of the Commissioner's denial of her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's motion for judgment on the pleadings [DE-27] be denied and that the Commissioner's motion for judgment on the pleadings [DE-29] be granted.

## STATEMENT OF THE CASE

On June 29, 2007, Claimant protectively filed applications for SSI and DIB. (R. 36-37.) She alleged disability beginning October 1, 2004 (R. 101), due to muscle disease, Charcot-Marie-Tooth disease, and a bacterial infection (R. 197). The applications were denied initially (R. 44-51) and upon reconsideration (R. 55-63). Claimant then requested a hearing before an Administrative Law Judge ("ALJ") (R. 64-65), which took place on October 6, 2009 (R. 19-35). On October 29, 2009, the ALJ issued a decision denying Claimant's application. (R. 6-15.) On

December 16, 2010, the Appeals Council denied Claimant's request for review (R. 1-5), which

rendered the ALJ's decision a "final decision" for purposes of judicial review. *See Walls v.*

*Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a

request for review, the underlying decision by the ALJ becomes the agency's final decision for

purposes of appeal). Claimant then commenced this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I.    The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the

Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence

supports the Commissioner's factual findings and whether the decision was reached through the

application of the correct legal standards. *Walls*, 296 F.3d at 290; *see also* 42 U.S.C. § 405(g).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a

particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). This Court must

not weigh the evidence, as it lacks the authority to substitute its judgment for that of the

Commissioner. *Walls*, 296 F.3d at 290. Thus, in determining whether substantial evidence

supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed

all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and

rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-

40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process to be followed in a disability case. 20 C.F.R. §§ 404.1520 & 416.920. At step one, if the

claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant

is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1. If the impairment meets or equals a Listing, the person is disabled *per se*. If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert ("VE"), who testifies as to jobs available in the economy based on the characteristics of the claimant.

## II.     The ALJ's Findings

The ALJ proceeded through the five-step sequential evaluation process. The ALJ first found that Claimant had not engaged in substantial gainful activity since October 1, 2004, the alleged onset date. (R. 11.) The ALJ next found that Claimant suffered from the severe impairments of Charcot-Marie-Tooth disease, Type II; low back pain; and bilateral lower extremity weakness. *Id*. However, at step three the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 12.) Next, the ALJ determined that Claimant had the RFC to perform a full range of sedentary work.

3

(R. 12-13.) At step four, the ALJ found that Claimant was unable to perform any past relevant work. (R. 13.) The ALJ finally determined that there were a significant number of jobs in the national economy that Claimant could perform. (R. 14.) As a result, the ALJ found that Claimant was not disabled from the alleged onset date through the date of decision. *Id*.

## III. The Administrative Hearing

### A. Claimant's Testimony

Claimant testified to the following at the administrative hearing. (R. 21-34.) Claimant was 24 years old at the time of the hearing and lived at home with her husband and two children, ages two and four. (R. 22.) She was 5'8" and weighed 230 pounds. *Id*. She graduated from high school, but was in special classes throughout her schooling. (R. 23.) She had difficulty with reading comprehension, but was good at math. (R. 23.) Claimant last worked as a cashier at Ormans for approximately eight or nine months. (R. 24.) Her responsibilities included mopping floors and stocking the cooler, which required lifting approximately 30 pounds. *Id*. She was terminated from her job for leaving the store unattended. (R. 25.) Prior to that, she worked as a cashier at JR's Tobacco Company and at Fast Break. *Id*. In the course of her work at JR's and Fast Break, she was not required to do any lifting. (R. 25-26.)

Claimant was diagnosed at age nine with Charcot-Marie-Tooth (Type II) disease, a progressive degenerative disease that affects the muscles. (R. 26.) As a result of her disease she has difficulty walking and cannot stand for long periods of time due to swelling in her leg. *Id*. She also wobbles from side to side when she walks and has constant back pain. *Id*. Claimant had corrective surgery, but it did not improve her condition. (R. 26-27.) Her condition worsened after she was terminated from her job and became pregnant. (R. 27.) She was falling frequently

4

and was unable to carry her children. *Id.* Claimant also has fluid and swelling in her legs and feet. *Id.* She received steroid shots to relieve the fluid, but they were not effective. *Id.* She lies down and elevates her feet three times a day for one to two hours to reduce the swelling. (R. 27-28.) Claimant has constant pain in her feet, and she takes a pain reliever and a muscle relaxer, which provide some relief. (R. 28.)

Claimant also has MRSA, which she described as a frequent bacterial infection on her skin that covers her entire body. (R. 28-29.) The infection manifests in fluid and blood filled blisters, which are painful and feel like a sting when touched. (R. 29.) She has flare ups "all the time" and "it never goes away." *Id.* She is taking Tetracycline, but it does not help, and her doctor told her she could not get rid of the infection. (R. 29-30.) Claimant estimated that, due to the pain in her feet, she could walk for approximately 10 minutes, stand for approximately five minutes before needing to sit down, and sit for about 20 minutes before needing to change positions. (R. 30.) She also estimated that she could lift approximately 30 pounds. *Id.*

Claimant mostly stays at home, and her mother and some friends come over to help her with her children. (R. 31.) She washes dishes, cooks dinner, and does laundry, but her husband helps with most household chores. *Id.* Claimant has a license and drives two or three times per week to her husband's workplace or to her parent's home, both of which are less than five miles from her home. *Id.*

### B. Medical Expert's Testimony

Dr. Helen Cannon testified as to her opinion of Claimant's medical condition. (R. 32-34.) She stated that Claimant had a diagnosis of Charcot-Marie-Tooth disease (Type II) with related complaints of low back pain and lower extremity weakness. (R. 33.) She noted that one

5

physician thought Claimant had mild depression, but that there was no mental health treatment. *Id.* It was Dr. Cannon's opinion that Claimant's impairments did not meet or equal a Listing. *Id.* Upon questioning by Claimant's attorney, Dr. Cannon further opined that Claimant would be limited to sedentary work. (R. 34.)

## IV.     Claimant's Arguments

In this case, Claimant alleges the following errors: (1) that the ALJ misinterpreted a consultative examiner's opinion with respect to Claimant's RFC; (2) that the ALJ failed to find that Claimant's recurrent bacterial infections and learning disability were severe impairments and failed to consider them in assessing Claimant's RFC; and (3) that the ALJ did not consider whether Claimant met Listing 11.14 for peripheral neuropathies.

### A.     Consultative Examiner's Opinion

Claimant contends that the ALJ misinterpreted a consultative examiner's opinion with respect to her RFC. Specifically, she contends that Dr. Tin Le did not find that Claimant had the RFC to perform sedentary work, which is contrary to the ALJ's statement that he did. The Commissioner contends that, while Dr. Le did not expressly state that Claimant could perform sedentary work, his opinion was consistent with a limitation to sedentary work. In determining that Claimant had the RFC to perform sedentary work, the ALJ stated that "Dr. Le opined that the claimant was able to perform sedentary work activity (Exhibit 8F)" and that he gave "significant weight" to Dr. Le's opinion because it was based on objective medical evidence. (R. 13.)

On February 11, 2008, Dr. Le examined Claimant and noted that her chief complaints were Charcot-Marie-Tooth disease and a bacterial infection of the skin. (R. 364.) Dr. Le

6

observed that she ambulated with a slow and abnormal gait, but that she did not use an assistive device at that time and that she could get onto the examination table without difficulty. (R. 365.) He noted that Claimant indicated that if she walked or stood for 15 minutes then she would have to rest due to tenderness and weakness in her feet. *Id.* Dr. Le was unable to evaluate Claimant's thoracolumbar spine due to pain and unstable standing secondary to both feet weakness and tenderness. (R. 366.) Evaluation of Claimant's feet showed the presence of high arch on both sides and palpation varied with some severe tenderness. *Id.* Range of motion of both feet were within normal limits with weakness of 4/5 on both sides. *Id.* Dr. Le noted that Claimant's ambulation was unstable for long distances, that she walked on the lateral side of both feet with a slow gait due to tenderness and weakness in both feet, that there was no muscle atrophy on both lower extremities, that her deep tendon reflexes were hyperactive 1+ and equal on both sides, and that there was no pretibial pitting edema on both sides. *Id.* Claimant's grip strength was 5/5, and Dr. Le observed that she could pick up small objects and pinch easily. *Id.* Dr. Le concluded that "there is severe impairment affecting her ability to stand for long period of time, to walk for long distance, to lift or carry heavy object due to tenderness and weakness of both feet." *Id.*

There is no dispute that Dr. Le fails to expressly state that Claimant can perform sedentary work. Nevertheless, his conclusion regarding Claimant's restrictions is consistent with the ability to perform sedentary work. Sedentary work is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

7

20 C.F.R. §§ 404.1567 & 416.967.  Dr. Le's opinion was that Claimant is limited from carrying "heavy objects," (R. 366) and Claimant testified that she could lift 30 pounds (R. 30), which are both consistent with the ability to perform sedentary work.  Dr. Le's opinion was that Claimant was limited in her ability to stand for a long period of time or to walk for long distances (R. 366), which is consistent with the ability to perform sedentary work, as it involves sitting and requires only occasional walking and standing.  Therefore, Claimant's limitations as described by Dr. Le are not inconsistent with sedentary work and any error by the ALJ in interpreting Dr. Le's opinion was harmless.

Claimant also argues that the ALJ erred in relying on the medical expert Dr. Cannon's opinion that Claimant was capable of performing sedentary work, because the opinion was based on an erroneous interpretation of Dr. Le's assessment.  Dr. Cannon stated as follows with respect to Claimant's limitations:  "[W]ith the record I have and basically there was a good exam, a thorough exam on February 11, 2008, the CE, based on that I think it would be just sedentary." (R. 34.)  Dr. Cannon does not state that Dr. Le concluded that Claimant was capable of performing sedentary work.  Dr. Cannon explained that her opinion was based on her review of the record and, specifically, Dr. Le's examination.  *Id*.  Therefore, it was not error for the ALJ to rely on Dr. Cannon's opinion that Claimant could perform sedentary work.

### B.    Severe Impairments

#### 1.    Recurrent Bacterial Infection

Claimant first contends that the ALJ erred by not finding that her recurrent bacterial infection was a severe impairment, citing her testimony at the administrative hearing (R. 29), a disability report (R. 197), Dr. Le's consultative opinion (R. 256-59), and notes from a February

8

4, 2009 doctor's visit (R. 432-34). The Commissioner contends that the objective evidence does not support a finding that the impairment was severe. The ALJ did not discuss Claimant's alleged recurrent bacterial infection.

A "severe impairment" is an impairment "which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) & 416.920(c). In other words, "[a]n impairment is 'severe' unless it 'has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Wilson v. Astrue*, No. 4:07-CV-148-FL, 2008 WL 2019650, at \*5 (E.D.N.C. May 9, 2008) (quoting *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984)). "As such, the 'severity standard is a slight one.'" *Id.* (quoting *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007)). However, being diagnosed with a condition does not necessarily mean that a resulting impairment is severe. *See Cobb-Leonard v. Astrue*, No. 3:10-cv-449, 2011 WL 4498876, at \*5 (W.D.N.C. Sept. 8, 2011) (recognizing that the fact of a diagnosis says nothing as to whether a condition is a "severe impairment"). A claimant must not only provide evidence of an impairment, but is further required to provide evidence of how that impairment affects his or her functioning. 20 C.F.R. §§ 404.1512(c) & 416.912(c).

Claimant testified that she has a frequent bacterial infection on her skin that covers her entire body and causes fluid and blood filled blisters, which are painful and feel like a sting when touched. (R. 28-29.) She also claimed that she has flare ups "all the time," that "it never goes away," that her medicine does not help, and that her doctor told her she could not get rid of the infection. (R. 29-30.) Although Claimant was asked at the administrative hearing how the condition affected her ability to work, she responded by describing her condition, but did not

9

indicate how it limited her functioning. *Id.* Likewise, while Claimant indicated on her Disability Report – Form SSA-3368 that a "bacterial infection" was among the conditions that limited her ability to work, she did not describe how it limited her ability to work and described only functional limitations from her Charcot-Marie-Tooth disease. (R. 197.) Likewise, while Dr. Le noted that Claimant reported a chronic skin infection and that she had a diagnosis of chronic furunculosis, he indicated no functional restriction associated with the condition. (R. 256-59.) Finally, the notes from a February 4, 2009 doctor's visit indicate that Claimant had a MRSA outbreak, recurrent abscesses, and multiple scars and facial acne for which she was prescribed Tetracycline. (R. 432-34.) Again, there is no indication of a functional limitation related to this condition in the treatment notes. Accordingly, because there is no medical evidence in the record that Claimant's bacterial infection creates a functional limitation that affects her ability to work, substantial evidence supported that the condition was not a severe impairment, and any error in the ALJ's failure to discuss the condition was harmless.

Claimant also contends that the ALJ erred in failing to consider her bacterial infection in the RFC assessment. As explained above, there is no medical evidence in the record that supports any limitation based on the alleged impairment. *See Kelly v. Astrue*, No. 5:08-cv-289-FL, 2009 WL 1346241, at *4 (E.D.N.C. May 12, 2009) (concluding the ALJ did not err in failing to consider certain impairments in the RFC assessment where the record did not demonstrate evidence of restrictions from the impairments); *Martindale v. Astrue*, No. 1:09-cv-466, 2011 WL 1103770, at *12 (W.D.N.C. Feb. 24, 2011) (rejecting contention that ALJ erred by failing to account for certain conditions in the RFC assessment, where claimant failed to cite evidence in

the record of limitations based on those conditions). Therefore, the ALJ did not err in failing to discuss Claimant's bacterial infection in the RFC assessment.

### 2. Learning Disability

Claimant next contends that the ALJ erred by not finding that her learning disability was a severe impairment and that he failed to consider it in the RFC assessment, citing her testimony at the administrative hearing (R. 23-24), her poor performance in school and special education classes (R. 134-43), and an examination note that her judgment was impaired (R. 334-38). Claimant does not argue that she met Listing 12.05, Mental Retardation, but contends that her learning disability precluded the ALJ's application of the grids. The Commissioner contends that the record does not support a finding that the impairment was severe or that she could not perform unskilled work.

Claimant's testimony at the administrative hearing was that she graduated from high school and was good in math, but had difficulty with reading comprehension and that her husband writes things down for her to help her understand. (R. 23-24.) Her school records do not include any IQ testing, but indicate low performance on achievement tests (R. 134-148) and placement in a learning resource class in the 1991-92 school year (R. 136). Finally, a consultative examiner, Dr. Johnson Draughon, noted on July 8, 2005 that Claimant's judgment was "impaired." (R. 337.)

The ALJ did not discuss Claimant's alleged learning disability. However, there is little evidence in the record to support that her alleged learning disability was a severe impairment. An impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Examples of "basic

11

work activities" relevant to mental ability are "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." *Id*. The record indicates that Claimant was able to care for her children, cook, pay bills, and handle money (R. 206-213) and that although she was a self described "slow learner," she did not have a severe mental impairment according to Dr. Tovah Wax, who conducted a consultative psychiatric review. (R. 349-363). While Dr. Draughon did note that Claimant's judgment was impaired, he also observed that she was oriented x 4, and that her concentration and memory seemed intact, and his assessment was "mild depression" for which he recommended further screening by her primary care physician. (R. 336-37.) Finally, there is no evidence in the record that Claimant had difficulty following simple instructions, dealing with supervisors or co-workers, or responding to changes in a routine work setting. Therefore, substantial evidence in the record supports that Claimant's alleged learning disability was not a severe impairment, and the ALJ's failure to discuss it was not error.

Furthermore, use of the grids is not precluded simply by Claimant's assertion of a nonexertional condition, because not every condition rises to the level of an impairment. *See Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984) ("[N]ot every malady of a "nonexertional" nature rises to the level of a "nonexertional impairment."). The ALJ may rely on the grids unless the "nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Id*. The ALJ determined that Claimant could perform sedentary work and relied upon Medical-Vocational Rule 201.27 in finding that Claimant was not disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Medical-Vocational Rule 201.27 (directing

a finding of "not disabled" for a younger individual that graduated high school and had unskilled or no past work experience). The regulations provide that sedentary work includes unskilled work, which requires "little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id*. §§ 404.1568(a) & 416.968(a); *see also id*. § 201.00(a) ("Most sedentary occupations fall within the skilled, semi-skilled, professional, administrative, technical, clerical, and benchwork classifications. Approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy.") Because the record does not support that Claimant's alleged learning disability affects her ability to perform the sedentary work of which the ALJ found her capable, it was not error for the ALJ to rely on the grids.

### C.     Listing 11.14

Claimant contends that she meets the requirement for Listing 11.14, Peripheral neuropathies, and that the ALJ erred by only considering Listings 1.02A and 1.04, because those are related to bone and joint disorders and Claimant's disorder is neurological. The Commissioner contends that Claimant did not meet Listing 11.14 and any error in failing to discuss this Listing was harmless.

As an initial matter, the ALJ's references to Listings 1.02A and 1.04 do not necessarily indicate that he misunderstood Claimant's condition as she suggests. The ALJ considered whether Claimant's Charcot-Marie-Tooth disease *and* her low back pain met a Listing. Listing 1.04, Disorders of the spine, would be appropriate to consider in relation to her low back pain. Additionally, in a July 17, 2010 letter to the Appeals Council, Claimant's attorney states in her discussion of the ALJ's decision that medical source statements find that Claimant has Charcot-

Marie-Tooth disease "which actually meets the requirements of listing 1.02 . . . " before going on to argue that she also met Listing 11.04. (R. 261.) The ALJ should not be faulted for considering a Listing that Claimant later asserted she met. Accordingly, there is nothing inherently erroneous in the ALJ's consideration of Listings 1.02A and 1.04.

Claimant also contends that she meets Listing 11.14, which requires a claimant to establish that the impairment causes "disorganization of motor function as described in 11.04B." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.14. Listing 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." *Id.* § 11.04B. Section 11.00C provides as follows:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms.

*Id.* § 11.00C. The evidence cited by Claimant does not establish that her symptoms are "[s]ignificant and persistent" as required by Listing 11.04B.

In support of her contention that she meets Listing 11.04B, Claimant cites testing from April 2001 that indicated she had "severe subacute denervation" and the absence of "right peroneal F response" (R. 412); her own statements that she had difficulty ambulating, including needing the assistance of a wheelchair or crutches at times due to instability and falling (R. 212-28); and the February 2008 report of Dr. Le that indicated Claimant was unstable (R. 364-66). Dr. Le's report offers the most recent examination of Claimant, and Dr. Le noted that her range

14

of motion was within normal limits for both feet, only 4/5 weakness on both sides, and no muscle atrophy on her lower extremities. (R. 366.) He also indicated that her ambulation was unstable *for long distances* and concluded that while her impairment was severe, it only affected her ability to stand for long periods, walk for long distances, and to lift heavy objects. (R. 366.) Such restrictions are not indicative of a significant "degree of interference with locomotion" and are not consistent with the requirement that the disorganization of motor function be "significant and persistent." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.04B & 11.00C. Dr. Le's report also undermines Claimant's credibility regarding the severity of her symptoms, as noted by the ALJ. (R. 13.) Finally, the ALJ permissibly relied on the opinion of Dr. Cannon, who testified at the administrative hearing that while Claimant had a diagnosis of Charcot-Marie-Tooth disease, she did not meet a Listing (R. 13 & 33). *See Smith v. Astrue*, No. 5:07-cv-469-BO, 2008 WL 4772193, at *3 (E.D.N.C. Oct. 28, 2008) (concluding that ALJ employed the correct legal standard in evaluating claimant's impairments "because he discussed them in combination and relied on a medical expert's testimony regarding whether Plaintiff's impairments met or exceeded a listing.") Accordingly, substantial evidence supports the ALJ's conclusion that Claimant's impairments did not meet or equal a Listing.

Lastly, the ALJ's failure to specifically discuss Listing 11.14 was not error. An ALJ is required to "explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." *Kelly*, 2009 WL 1346241, at *5 (quoting *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999)). The Fourth Circuit has previously found error where the "ALJ failed to identify the relevant listings and to explicitly compare the claimant's symptoms to the requirements of

the listed impairments." *Johnson v. Astrue*, No. 5:08-cv-515-FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) (citing *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986)). However, "[m]eaningful review may be possible even absent the explicit step-by-step analysis set out in *Cook* where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof." *Id.* (citing *Green v. Chater*, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. 1995)). In this case, although the ALJ did not specifically discuss Listing 11.14, he did evaluate the medical evidence with respect to Claimant's Charcot-Marie-Tooth disease. (R. 11-13.) Therefore, the ALJ's discussion of the evidence and explanation of his conclusions indicate that he sufficiently considered whether Claimant's impairment met or equaled a Listing.

**CONCLUSION**

The undersigned **RECOMMENDS** that Claimant's motion for judgment on the pleadings [DE-27] be **DENIED** and that the Commissioner's motion for judgment on the pleadings [DE-29] be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 16th day of February, 2012.

DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE

16